UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-20103-CR-DMM

UNITED STATES OF AMERICA

vs.

BRETT THOMAS GRAHAM,

                Defendant.

_____/



COURT EXHIBIT

CASE NO. 25-CR-20103

EXHIBIT NO. B

**FACTUAL PROFFER**

      The Defendant, BRETT THOMAS GRAHAM (the "Defendant"), his counsel, and the United States agree that, had this case proceeded to trial, the United States would have proven the following facts, among others, beyond a reasonable doubt:

      1.     Since approximately 2020, the Defendant has been a resident of Miami-Dade County in the Southern District of Florida.

      2.     Family Member-1 was the Defendant's close, elderly family member. She became a widow in approximately 2017.

      3.     In or around November 2018, the Defendant assisted Family Member-1 in retaining Financial Advisor-1, a registered investment advisor headquartered in New York, New York. Financial Advisor-1 was hired to provide Family Member-1 with financial planning and investment management services.

      4.     From approximately September 2019, and continuing through in or around April 2024, the Defendant executed a scheme and artifice to defraud Family Member-1 and Financial Advisor-1 out of approximately $8.4 million belonging to Family Member-1. In approximately November 2020, the Defendant became Family Member-1's power of attorney. As such, he was

obligated to act in Family Member-1's best interest.  Repeatedly, however, the Defendant made material and false representations to Financial Advisor-1 and others that he was spending Family Member-1's money on her behalf, including by making investments and paying for her medical care.  In fact and in truth, he was not.  The Defendant's misrepresentations enabled him to transfer approximately $8.4 million from accounts controlled by Family Member-1 and/or Financial Advisor-1 to his own checking account.  The Defendant then spent Family Member-1's money on himself and others.

5. In or around February 2019, Family Member-1 sold a townhouse she owned in New York, New York, for approximately $9 million.  Family Member-1 received approximately $8.296 million from the sale.

6. Family Member-1 provided nearly all of the proceeds to Financial Advisor-1 to manage on her behalf.

7. In approximately September 2019, the Defendant began transferring money from Family Member-1's savings account at JP Morgan Chase ending in x6750 ("Account x6750") to his checking account at First Republic ending in x4150 ("Account x4150").

8. In September and October 2019, the Defendant transferred approximately $225,000 from Account x6750 to Account x4150.

9. In approximately November 2019, the Defendant began transferring money from a brokerage account he managed on behalf of Family Member-1 ("Account x9166") to his own Account x4150.

10. On or about May 4, 2020, the Defendant emailed representatives of Financial Advisor-1 and asked them to transfer into Account x9166 an additional $500,000.  In an email dated May 4, 2020, the Defendant wrote that the money "will be used for both directed (private)

and more opportunistic investing." This was untrue. The Defendant spent the resulting proceeds for his personal benefit.

11. On or about December 15, 2020, the Defendant emailed Financial Advisor-1 an executed Power of Attorney. The Power of Attorney, signed by the Defendant and Family Member-1, obligated the Defendant to act in Family Member-1's best interest. Specifically, the agreement stated:

> You must (1) act according to any instructions from the principal, or, where there are no instructions, in the principal's best interest; (2) avoid conflicts that would impair your ability to act in the principal's best interest; (3) keep the principal's property separate and distinct from any assets you own or control[;] [and] (4) keep a record or all receipts, payments and transactions conducted for the principal[.]

12. In addition, the Power of Attorney stated, "You may not use the principal's assets to benefit yourself or anyone else or make gifts to yourself or anyone else unless the principal has specifically granted you that authority in this document[.]" No such authority was granted in the document.

13. In his email attaching the Power of Attorney, the Defendant asked Financial Advisor-1 to make available an additional $250,000. The Defendant explained that the money was needed to pay for Family Member-1's "higher medical & care expenses[.]" The Defendant, however, moved the resulting proceeds from Account x6750 to Account x4150 and spent it on himself.

14. On approximately November 21, 2022, the Defendant emailed Financial Advisor-1 employees and asked that they "make $400,000 available to transfer from [Family Member-1's] account at your earliest convenience." A Financial Advisor-1 employee replied that he "would be happy to help free up the necessary funds" but wanted to "note that with this distribution, [Family Member-1] will have withdrawn nearly $2,500,000 from her portfolio in 2022." The Defendant

replied, "Please work to make the finds available[.] Amazing opps in follow on P/E. This will pretty much fill my idea of allocation."

15.     The Defendant did not invest the resulting proceeds on Family Member-1's behalf. Rather, after transferring the money to his account, he spent over $300,000 on his credit card, art, travel, and rent.

16.     On approximately April 12, 2023, the Defendant again emailed employees of Financial Advisor-1: "Can you please make $800,000 available in [Family Member-1's] account over the next week, it will be re-allocated in fixed income so maybe take that as a direction where to pull from." The Defendant transferred the resulting $800,000 to his account between April 14 and April 24, 2023. Between April 17 and 24, 2023, the Defendant paid $532,466.99 towards his American Express bill.

17.     The Defendant continued to liquidate and deplete Family Member-1's accounts. Financial Advisor-1 subsequently terminated its services agreement with Family Member-1.

18.     Between approximately 2019 through 2024, the relevant time period of the criminal conduct, the Defendant purchased at least twelve (12) items of jewelry and one (1) art piece, as detailed in Attachment A to the Plea Agreement, all with proceeds of his criminal conduct, which he obtained from Family Member-1's bank accounts unlawfully.

The parties agree that these facts, which do not include all facts known to the United States and the Defendant, are sufficient to prove to the sole count of the Information.

HAYDEN P. O'BYRNE
UNITED STATES ATTORNEY

Date: 5/13/25    By: _____
ELI S. RUBIN
ASSISTANT U.S. ATTORNEY

Date: 5/13/25    By: _____
ELIZABETH BLAIR
ATTORNEY FOR DEFENDANT
ASSISTANT FEDERAL PUBLIC DEFENDER

Date: 5/13/25    By: _____
BRETT THOMAS GRAHAM
DEFENDANT